# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DAVID MARISCAL,

    *Plaintiff*,

vs.

HOWARD SKOLNIK*, et al.*

    *Defendants*.

2:09-cv-02334-KJD-RJJ

ORDER

This removed *pro se* prisoner civil rights action by a Nevada state inmate comes before the Court for review of the complaint under 28 U.S.C. § 1915A as to the claims that remain for disposition.

When a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

In considering whether the plaintiff has stated a claim upon which relief can be granted, all material factual allegations in the complaint are accepted as true for purposes of initial review and are to be construed in the light most favorable to the plaintiff. *See,e.g., Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). However, mere legal conclusions unsupported by any actual allegations of fact are not assumed to be true in reviewing the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 & 686-87 (2009). That is, bare and conclusory assertions that constitute merely formulaic recitations of the elements of a cause

of action and that are devoid of further factual enhancement are not accepted as true and do not state a claim for relief. *Id.*

Further, the factual allegations must state a plausible claim for relief, meaning that the well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).
>
> . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678.

Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In the complaint, plaintiff David Mariscal alleges principally the following underlying factual particulars, which are accepted as true solely for purposes of this review. On October 14, 1994, Mariscal was convicted, pursuant to a jury verdict, in Nevada state court of first-degree murder with the use of a deadly weapon. He was sentenced to two consecutive sentences of life without the possibility of parole, with credit for 302 days time served.

According to the complaint, a state court ordered resentencing on state post-conviction review in 2003. Mariscal ultimately was resentenced on April 6, 2007. He was resentenced to two consecutive sentences of life with eligibility for parole consideration after a minimum ten years on each such sentence separately. He thus faced a total minimum of twenty years prior to a parole from physical custody, assuming a discretionary grant of parole on each sentence after the ten year minimum on each sentence had been served.

A short time after this resentencing, on July 6, 2007, the state parole board held a parole hearing for Mariscal. Plaintiff alleges that he was told that the parole hearing was a retroactive parole board hearing and that "'we're treating this as a 2003 hearing.'"[1]

The retroactive parole being considered thus corresponded to the ten-year minimum prior to eligibility for consideration for parole on the first consecutive sentence in 2003. By definition, the parole under consideration thus would be a possible institutional parole from one consecutive sentence to the next, as plaintiff's sentence structure under the resentencing required a total minimum sentence of at least twenty years prior to any parole from physical custody (again assuming a discretionary, and as discussed herein not foreordained, grant of parole on each sentence after the ten-year minimum on each sentence had been served).

Plaintiff further alleges that the parole board "den[ied] review of Plaintiff's parole consideration for two (2) years," apparently referring to the July 6, 2007, order of the board providing "that further consideration of parole is DENIED until - - - 06-13-2009."[2]

In Count I, plaintiff alleges that he was subjected to an untimely parole board hearing in violation of, *inter alia*, due process. He alleges that by holding the parole hearing four years late and then denying further consideration for parole (after denying parole) for another two years the defendants pushed his sentence "six (6) years past the statutory minimum that the court expected the plaintiff to serve." He maintains that as a result of the alleged acts and omissions "plaintiff will not be considered for release until sometime in 2019, six (6) years beyond the original sentence imposed by the court [such that] Plaintiff's expectation of release on parole will not transpire until he has served [approximately six years] more than the court sentenced him to."[3]

In Count II, plaintiff alleges that he was subjected to, *inter alia*, a deprivation of liberty and cruel and unusual punishment because the retroactive parole board hearing "prolonged

---

[1] #1-2, at handwritten pages 12 & 15.

[2] Compare #1-2, at handwritten page 13, with #26-2, Ex. 1.

[3] #1-2, at handwritten page 13.

his imprisonment" and "created a 'significant risk' of increased incarceration and adverse and future risk of harm."  He maintains that defendants knew the untimely parole board hearing "would prolong Plaintiff's confinement" and that "Plaintiff will spend at least an additional six (6) years <u>before</u> his expectation of release is realized in 2019, when the court imposed sentence was 20 years to life, not 26 years to life."[4]

In Count III, plaintiff alleges that he is subjected to racial discrimination and denial of his freedom of association by alleged disparate and unequal treatment of Hispanics in parole board hearings.  He alleges that he is Hispanic and a member of the Sureños gang.  He alleges that defendants "miscalculate the 'static and dynamic risk' factors to place the Hispanic Plaintiff, and other similarly situated Plaintiff's [sic] in a higher category to justify lengthier parole denials than whites receive to justify prolonging their imprisonment."

Plaintiff seeks declaratory relief, injunctive relief "on the primary and enhancement sentence," and $10,000 in monetary damages to compensate him for having "suffered significant loss of liberty."[5]

Plaintiff seeks to proceed against two sets of defendants who have been referred to herein as the "Parole Board Defendants" and the "NDOC Defendants."  The Court previously dismissed the claims against the Parole Board Defendants on a motion for summary judgment.

At the very outset, Counts I and II are based upon inherently flawed logic.

First, plaintiff proceeds on the flawed legal premise that holding a parole board hearing in 2007 that was retroactive to 2003 caused his incarceration to be prolonged.  However, nothing about the underlying fact that the board held a 2007 hearing that the complaint explicitly alleges was retroactive to 2003 resulted in a lengthening of plaintiff's incarceration. Plaintiff was being considered for an institutional parole from one consecutive sentence to the next.  Even if the parole board had held a hearing in 2003 – at a point in real time when

---

[4] #1-2, at handwritten pages 14-15 (emphasis in original).

[5] #1-2, at handwritten pages 14, 15, 19 & 20.

plaintiff still actually had been sentenced to consecutive sentences of life *without* possibility of parole – and even if the parole board then had granted parole, Mariscal still would have been in physical custody later in 2007, albeit on the second sentence rather than the first. Nothing in the situation merely of holding a retroactive hearing prevented the parole board from instead making the same determination in 2007 and retroactively recalculating where plaintiff stood in his two sentences. As discussed below, nothing *required* the board to *grant* parole, at any time. But the mere fact that the board *considered* parole eligibility as of the ten-year point in Mariscal's first sentence in 2003 retroactively four years later in 2007 – promptly following his resentencing – itself led to plaintiff being incarcerated for a longer period of time. Plaintiff seeks to turn what in truth was action taken to his advantage – retroactive consideration for parole from his first sentence promptly following his resentencing – instead to his disadvantage. *Iqbal* does not require that the Court accept plaintiff's plainly and fundamentally flawed legal premise in this regard as true.

Second, plaintiff proceeds – at an even more fundamental level – on the also plainly flawed premise that he was entitled to a grant of parole after ten years on each consecutive sentence. He alleges in this regard that the 2007 denial of parole first retroactively back four years to 2003 and then for another two years forward to 2009 has resulted in his serving six years "past the statutory minimum that the court expected the plaintiff to serve" and "more than the court sentenced him to." This premise is wholly flawed. Plaintiff was sentenced in 2007 not to two ten-year sentences but instead to two consecutive sentences each of ten years *to* life. There is no legitimate expectation under the applicable law, by the sentencing court or otherwise, that plaintiff will serve only the minimum ten years on each sentence. If plaintiff is denied parole on the first or second sentence on each succeeding parole consideration for the rest of his life, then plaintiff, who stands convicted of first-degree murder with the use of a deadly weapon, will be incarcerated for the rest of his life. That is how a ten to life sentence works. It is established beyond peradventure that an inmate has no entitlement to a grant of parole, at any time, under Nevada law. The Nevada legislature expressly has stated that release on parole is an "act of grace of the State" and that "it is not

intended that the establishment of standards relating thereto create any such right or interest in liberty." N.R.S. 213.10705; *see also Severance v. Armstrong*, 96 Nev. 836, 838-39 620 P.2d 369, 370 (Nev.1980)(Nevada parole statutes provide "no legitimate expectation of parole release"). *Iqbal*, once again, does not require that the Court accept plaintiff's fundamentally flawed legal premise to the contrary to be true.

If, *arguendo,* the Court were to accept plaintiff's flawed legal premises as true, then his suit just as plainly is not cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994), because plaintiff necessarily is challenging the duration of his confinement. Indeed, that is the gravamen of and the very *raison d'être* for his complaint, as he is maintaining that the alleged acts and omissions of the defendants improperly have lengthened his incarceration by six years. When a § 1983 plaintiff presents claims that necessarily challenge the continuing validity of either the fact or duration of his confinement, then his claims are not cognizable in habeas corpus "no matter the relief sought (damages or equitable relief), [and] no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)(emphasis in original). A § 1983 plaintiff seeking to challenge the continuing validity of his confinement or the duration thereof first must establish that the confinement has been declared invalid by a state tribunal authorized to make such a determination, expunged by executive order, or called into question by the grant of a federal writ of habeas corpus. *Heck*, 512 U.S. at 486-87.

Plaintiff's claims fall squarely within the *Heck* bar. Indeed, it is difficult to imagine a more direct challenge to the duration of an inmate's confinement based upon a challenge to a past parole denial. This conclusion holds true as well with regard to Count III, where plaintiff alleges that the alleged discriminatory actions of defendants have prolonged the duration of his confinement and that of other Hispanics. While plaintiff perhaps may challenge such alleged discriminatory prolonging of incarceration, he must do so through appropriate post-conviction procedures seeking to render his alleged prolonged incarceration invalid. From the allegations presented, it is clear that the rejection of plaintiff's parole at the 2007 hearing

through June 13, 2009, has not been declared invalid in state or federal post-conviction proceedings or expunged by executive order.[6]

Moreover, to the extent, if any, that any claims were not *Heck*-barred with regard to the July 6, 2007, order denying parole through June 13, 2009, the claims nonetheless clearly were time-barred. As discussed in the order granting summary judgment to the Parole Board Defendants, civil rights actions arising out of Nevada are governed by a two-year limitations period. *See,e.g., Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999)(federal courts apply the forum state's personal injury statute of limitations for section 1983 claims); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir.1989)(Nevada's statute of limitations for personal injury claims is two years). If claims were not cognizable under *Heck*, then they had not yet accrued. If, however, claims were not *Heck*-barred, then the limitations period began running after July 6, 2007. The removed state court suit was not commenced until September 25, 2009, more than two years later, such that any claims that are not *Heck*-barred are time-barred.

---

[6]Plaintiff maintains that in No. 3:07-cv-00408-PMP-VPC "the Court suggested [to him] to either file a writ a mandamus or a Civil Rights Tort Act [under] 42 U.S.C. § 1983." #28, at 3. The Court did not suggest to plaintiff in the prior case that he could or should file a § 1983 suit. In No. 3:07-cv-00408, Mariscal filed a federal habeas action challenging the parole denial. The Court held that he had not exhausted the claims in the federal petition, as amended. In response to Mariscal's argument that he did not have an adequate and available state remedy, the Court stated:

> Petitioner does have an adequate and available state remedy. Petitioner can file a habeas corpus petition with the clerk of the *district court* in the county where he is incarcerated. Petitioner only attempted to file a petition with the justice court, which cannot review state postconviction petitions. Moreover, if it is the state district court clerk that is refusing to file the petition, then the petitioner can file a petition for writ of mandamus with the Nevada Supreme Court. NRS 34.160 (stating that a writ of mandamus may be issued by the supreme court to "compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust of station"). *See also* Nev. R. App. P. 21. As the petitioner has a remedy in the Nevada state courts, petitioner will be required to exhaust his claims.

No. 3:07-cv-00408, #37, at 3-4 (emphasis in original). Nothing in the Court's statement suggested that Mariscal properly could pursue his challenge in a § 1983 action. The Court thus has not stated in a prior action that Mariscal could pursue a civil rights remedy only to then tell him that he could not pursue that remedy when he pursued it in a later action. The Court plainly and consistently has stated to plaintiff that he must seek *post-conviction relief* on his claims. Plaintiff's statement that the Court suggested to him to file a § 1983 action is as frivolous as his underlying claims. Plaintiff is cautioned that making a false statement to a court can subject him to, *inter alia*, disciplinary sanctions for major violation MJ48 under NDOC administrative regulations.

Plaintiff's federal procedural due process claims in Counts I and II further plainly are without merit on their face, as to any relief sought.  Plaintiff must establish that he was deprived of a protected liberty interest as a fundamental threshold prerequisite to any procedural due process claim. *See,e.g., Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  It is well-established law that a state parole statute does not create a protected liberty interest for purposes of federal constitutional due process protections unless the state statute mandates that parole "shall" be granted following the fulfillment of specified requirements. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir.1985).  As discussed previously, the Nevada legislature expressly has stated that release on parole is an "act of grace of the State" and that "it is not intended that the establishment of standards relating thereto create any such right or interest in liberty." N.R.S. 213.10705; *see also Severance v. Armstrong*, 96 Nev. 836, 838-39 620 P.2d 369, 370 (Nev.1980)(Nevada parole statutes provide "no legitimate expectation of parole release"). Nevada inmates thus have no protected liberty interest in Nevada parole hearings. *See Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010); *Garcia v. Nevada Board of Prison Commissioners*, 2008 WL 818981, at *7 (D.Nev., Mar. 24, 2008); *Cooper v. Sumner*, 672 F.Supp. 1361, 1366-67 (D.Nev. 1987); *Kelso v. Armstrong*, 616 F.Supp. 367, 369 (D.Nev. 1985); *Austin v. Armstrong*, 473 F.Supp. 1114, 1116-17 (D.Nev. 1979).  Thus, in this case, plaintiff cannot establish the denial of a protected liberty interest as a fundamental prerequisite for claims – again, regardless of the relief sought – as to the procedures followed by the parole board in his case.

Plaintiff's Eighth Amendment claims similarly plainly are without merit on their face. Being denied an institutional parole from one otherwise lawful consecutive sentence to the next plainly does not subject an inmate to cruel and unusual punishment.  The inmate is incarcerated under the same basic conditions – vis-à-vis the character of his confinement as it relates to Eighth Amendment protections – regardless of whether he is granted or denied the institutional parole.

1  The Court therefore need not reach issues as to whether plaintiff has stated claims particularly against the remaining defendants in either their official or individual capacities. The Court does note that any alleged connection of the remaining defendants -- following the dismissal of the claims against the Parole Board Defendants – to the acts and omissions alleged is tenuous at best.  However, the underlying claims in all events, as to all defendants named, fail to state a claim upon which relief may be granted.

The remaining claims against the remaining defendants accordingly will be dismissed for failure to state a claim upon which relief may be granted.  The Court finds that delaying dismissal for an opportunity to amend would be futile given that the underlying premises of plaintiff's claims for civil rights relief in this proceeding fundamentally are without merit.

IT THEREFORE IS ORDERED that all remaining claims against all remaining defendants are DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

IT FURTHER IS ORDERED, in the event of an appeal, and pursuant to 28 U.S.C. § 1915(a)(3), that the Court certifies to the Court of Appeals that an appeal is not taken in good faith. As discussed herein, plaintiff's claims, *inter alia*, at best are *Heck*-barred and at worst are based upon fundamentally-flawed legal premises that a court is not required to accept as true under *Iqbal*.  An appeal from the dismissal accordingly is frivolous such that an appeal would be dismissed in the case of a non-indigent litigant.  So that the certification herein may be clearly marked for review by the Court of Appeals, the Clerk of this Court shall prominently include within the docket entry for this order a statement that the order of dismissal also certifies to the Court of Appeals that an appeal would not be taken in good faith.

The Clerk shall enter final judgment accordingly, in favor of defendants and against plaintiff, dismissing this action.

DATED: June 29, 2012

_____
KENT J. DAWSON
United States District Judge